WESTINGHOUSE ELECTRIC & MFG. CO. v. FORMICA INSULATION CO.

(Circuit Court of Appeals, Sixth Circuit. January 9, 1923.)

No. 3716.

Patents ☞328—858,384, claims 2, 3, and 5, for machine for manufacturing insulating tubes, held not infringed.

The Haefely patent, No. 858,384, claims 2, 3, and 5, relating to machines for manufacturing insulating tubes of comparatively small diameters, *held* not infringed unless they were given such broad construction as to be void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity for infringement of patent by the Westinghouse Electric & Manufacturing Company against the Formica Insulation Company. From a decree dismissing the bill, complainant appeals. Affirmed.

John C. Kerr, of New York City, and Alfred M. Allen, of Cincinnati, Ohio, for appellant.

J. Edgar Bull, of New York City, and John H. Lee, of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This appeal involves the questions of the validity, and, if valid, the infringement by appellee, of claims 2, 3, and 5 of patent No. 858,384, relating to machines for manufacturing insulating tubes of comparatively small diameters, issued to the Westinghouse Electric & Manufacturing Company as assignee of Emil Haefely. In the manufacture of these tubes it is necessary to use so small a mandrel that it will not, without breaking or bending, resist the application of heat and pressure, unless supported by opposing pressure along its entire length.

The claims of this patent involved in this litigation read as follows:

"2. A machine for manufacturing insulating tubes comprising a mandrel, a longitudinally recessed mandrel holder, a pressure device that rests upon the material wound upon said mandrel, and means for heating the material as it passes to said mandrel and is wound thereon.

"3. A machine for manufacturing insulating tubes comprising a mandrel, a mandrel holder having a longitudinal recess in which the mandrel is rotated, a pressure device that is supported upon the layer of material wound upon the drum, and means for heating the material during the winding operation."

"5. In a machine for manufacturing tubes, the combination with a mandrel and a holder having a longitudinal recess to receive the mandrel, of means for feeding a sheet of fabric to the mandrel and a pressure device which exerts a constant and downward pressure upon the material on said mandrel and means for heating the material as it passes to and is wound upon said mandrel."

The complaint also averred that defendant was infringing claims 2 and 3 of process patent No. 858,385, but these claims were withdrawn by plaintiff during the trial. The District Court found that there was no infringement, and entered a decree dismissing the bill of complaint, with costs to the defendant.

In the machine of the patent in suit, the mandrel is of the floating type, and rests on a longitudinally recessed mandrel holder, consisting of two flat members arranged in the form of a V-shaped trough. There is a pressure device in vertical relation to the mandrel and mandrel holder. This device is provided with longitudinal ribs, one of which, by force of gravity only, presses uniformly downward against the paper being wound on the mandrel to form the tube. This paper is heated before reaching the mandrel by passing over a table heated by means provided for that purpose located in the interior of the V-shaped mandrel holder. Neither the mandrel holder nor the pressure device rotates while the machine is in operation, but when not in operation the man-

drel holder may be rotated to present another V-shaped recess, there being eight in all, and the pressure device may be rotated to present another longitudinal rib. It is insisted that this construction permits a constant and uniform pressure upon the material during the winding operation, and provides three lines of pressure approximately 120 degrees apart, and that the heat generated within the mandrel holder is imparted with substantial uniformity to a table to the right of the mandrel holder, which table heats the material to be wound into a tube to a desired temperature before reaching the mandrel.

The winding of tubes upon a mandrel is old in this and allied arts. For many years prior to the application of Haefely for the patent in suit, an unpatented machine for making tubes of hard fiber was in use. This machine consisted of a mandrel mounted on stationary journal bearings; a heated roll in horizontal relation to the mandrel, spring-pressed and mounted on a carriage, which roll communicated both heat and pressure to the paper being wound upon the mandrel; and a cold roll, spring-pressed, also in horizontal relation to the mandrel, but on the opposite side from the hot roll. This cold roll was also mounted on a carriage, and communicated pressure upon the paper and mandrel directly opposed to the pressure of the hot roll. The Haefely machine differs from this machine in prior use, in that in the Haefely machine the mandrel is of the floating type, and not mounted on stationary journal bearings; that its points of contact of the mandrel holder with the mandrel and the material being wound thereon do not rotate while the machine is in operation; that pressure is applied by a pressure device in vertical relation to the mandrel and mandrel holder, which device exerts pressure by gravity instead of by springs; that there are three points of contact, instead of two, and that the paper or other material is heated before it reaches the mandrel, instead of after it comes in contact therewith.

The Westinghouse Company constructed its first machines exactly as designed by Haefely, but these machines were not satisfactory, for the reason that, if the desired temperature and pressure were applied, the friction of the fixed nonrotating parts of the mandrel holder and pressure device would tear the sheets. Thereupon two rolls were substituted for the V-shaped mandrel holder, and another roll was substituted for the flat, fixed surface of the pressure device. If this machine, as now constructed, comes within the terms of the patent, then it differs from the machine in prior use only in that it has an additional roll, in the location of these rolls with reference to the mandrel, and in the application of pressure by gravity instead of by springs.

The original application for the Haefely patent contained four claims. Claims 2 and 3 were rejected upon Beckwick, 650,567, and claim 3 was rejected upon Mottram, 157,970. The Mottram patent related to a machine for the manufacture of barrels and other packages for commercial purposes from paper, straw, or millboard, which invention included three rotating pressure rolls. The appellant thereupon amended his application, and called attention of the Examiner to the fact that his invention related to a stationary support for the mandrel, of angular cross-section, which would not rotate when the machine was

in operation. Later all the specifications and claims of the original application were canceled, except the signature of the inventor, and on October 3, 1905, other specifications and claims were substituted therefor. In these specifications appears for the first time the statement in reference to three lines of pressure approximately 120 degrees apart, but neither of the claims in suit specifically covers this feature.

It is insisted upon the part of the appellee that, if the appellant is correct in its claim that this feature is the essence of the patent in suit, then this invention must date from the 3d day of October, 1905, when the substitute specifications and claims were filed. It is further insisted that, if this feature is the essence of the invention, the patent is invalid, for the reason that no supplemental oath was made or filed by the appellant in support of this amendment of the original application, introducing for the first time this essential element.

For the purposes of this case it is wholly unnecessary to determine this question. The defendant's machine that is claimed to infringe claims 2, 3, and 5 of the Haefely patent is, in all substantial respects, the machine above described, and shown by the evidence to have been in use for many years prior to the filing of the Haefely application, except that there is substituted in defendant's machine a pair of cold rolls for the one cold roll of the old machine. These rolls are located in substantially horizontal position to the mandrel, and, taking into account this spring-yielding feature, cannot as effectively hold the mandrel in place while the tissue is being wound upon it as if they were directly beneath it, as in plaintiff's construction. It is further apparent that, when the spring pressure is released and the machine is opened for the purpose of inserting or removing the mandrel, these rolls can in no way function as a mandrel holder. Therefore the mandrel is mounted on stationary journal bearings. The pressure from these rolls upon the mandrel and the material being wound thereon is exerted by springs, and these springs permit the expansion necessary to accommodate the increasing size of the tube as the material is being wound upon the mandrel.

This third cold roll, or rather this pair of cold rolls substituted for the one cold roll of the old machine, was wholly unnecessary when the mandrels were of sufficient size to withstand the pressure, but with the coming of the demand for tubes of lesser diameter, the smaller mandrels necessary to be used in their manufacture will not, of themselves, resist the strain put upon them in winding without yielding or springing.

In the prior patent art three rolls are shown (Badgley, 472,408, and Farrington, 454,113). There is also evidence tending to prove that this third cold roll, or substitutes of a pair of cold rolls for the one cold roll, was incorporated into the old machine in prior use in 1902, or substantially two years before the filing of Haefely's application in 1904. However that may be, this court is of the opinion that the addition of this third roll, or the substitution of a pair of rolls for the one cold roll of the old machine, is not invention, but an obvious expedient to meet this new phase of manufacturing requirements.

If, therefore, claims 2, 3, and 5 of the patent in suit are limited to the

matters and things therein specified, which distinguish the claimed invention from the prior patent art and from the unpatented machine in use for at least 20 years prior to the filing of the Haefely application, we have no reason to doubt their validity; but, so construed, the defendant's structure does not infringe either of these claims. If they are to be construed so broadly as to include the defendant's present structure, then they are void for lack of invention.

The judgment of the District Court is affirmed.